## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Omar M.,

                                                        Civ. No. 20-1784 (NEB/BRT)

                    Petitioner,

v.

William Barr, U.S. Attorney General; Chad
Wolf, Acting Secretary, Department of
Homeland Security; Matthew Albence,
Acting Director, Immigration and Customs
Enforcement; Shawn Byers, Acting
Director, St. Paul Field Office, Immigration
and Customs Enforcement; Eri Holien,
Sheriff, Kandiyohi County,

                                                        **ORDER AND REPORT
                                                        AND RECOMMENDATION**

                    Respondents.

---

Jacob J. Stillwell, Esq., Perkins Coie LLP, and John R. Bruning, Esq., The Advocates for
Human Rights, counsel for Petitioner.

Ana H. Voss, Esq., and Ann M. Bildtsen, Esq., Assistant United States Attorneys,
counsel for Respondents.

---

BECKY R. THORSON, United States Magistrate Judge.

        Petitioner Omar M. ("Petitioner") is currently in the custody of the Immigration

and Customs Enforcement Agency ("ICE") pending the outcome of his ongoing removal

proceedings. Petitioner seeks relief in the form of release from custody or, in the

alternative, an order requiring Petitioner's release after thirty days unless he is granted a

new bond hearing where the Government must establish by clear and convincing

evidence that Petitioner presents a flight risk or a danger to the community. (Doc. No. 1, Habeas Pet. 38–39.) Petitioner also seeks reasonable attorneys' fees, costs, and other disbursements pursuant to 28 U.S.C. § 2412(d) and 5 U.S.C. § 504, if applicable. For the reasons stated below, this Court recommends that the Petition be granted in part and denied in part.

## I.      Factual Background

Petitioner—who is a native and citizen of Somalia—entered the United States on June 26, 1999, as a refugee. (Doc. No. 7, Van Der Vaart Decl. ¶ 4, Ex. 1.) Petitioner later adjusted his status to that of Lawful Permanent Resident retroactive to his admission as a refugee. (Van Der Vaart Decl. ¶ 4, Ex. 2 at 1.) After that, Petitioner had several encounters with law enforcement.

### A.      Petitioner's Criminal Record

Petitioner was arrested for the first time on September 14, 2005, on theft charges that were later dismissed. (Van Der Vaart Decl. ¶ 6, Ex. 3 at 6–7.) On November 1, 2006, Petitioner was arrested in Wisconsin and charged with "dealer possess/untax control system and possession with intent to deliver non-narcotics." (Van Der Vaart Decl. ¶ 6, Ex. 3 at 15–17.) Prosecution of that offense was deferred. (*Id.*) On March 22, 2007, Petitioner was arrested in Minnesota for domestic assault and fifth-degree assault; these charges were continued for dismissal. (Van Der Vaart Decl. ¶ 7, Ex. 3 at 7.) On December 2, 2008, Petitioner was arrested for financial transaction card fraud and, again, the charge was dismissed. (Van Der Vaart Decl. ¶ 8, Ex. 3 at 8.)

On February 8, 2008, Petitioner was convicted and sentenced in New York for possession of a controlled substance (cathinone, or "khat") in violation of 21 U.S.C. § 844(a). (Van Der Vaart Decl. ¶ 9, Ex. 4 at 1.) On September 29, 2009, Petitioner was arrested for driving under the influence and open bottle in Minnesota; those charges were later dismissed. (Van Der Vaart Decl. ¶ 10, Ex. 3 at 8.) Petitioner was arrested again on July 10, 2010, and charged with criminal sexual conduct in the first degree, and criminal sexual conduct in the third degree. (Van Der Vaart Decl. ¶ 11, Ex. 3 at 9.) These charges were also dismissed. (*Id.*) In 2011, Petitioner was arrested and cited twice, once for driving after suspension, and once for operating an uninsured vehicle. (Van Der Vaart Decl. ¶ 12, Ex. 3 at 10.)

On June 6, 2017, Petitioner was convicted in Hennepin County District Court on two counts of "Fraud – Employment of Runners" in violation of Minn. Stat. § 609.612, subd. 2. (Van Der Vaart Decl. ¶ 13, Ex. 5.) Petitioner was sentenced to 364 days in jail and ordered to pay restitution to the Minnesota Department of Commerce. (*Id.*) That sentence was stayed for two years with concurrent supervised probation. (*Id.*) However, rather than being released, Petitioner was moved from criminal custody into immigration custody on June 6, 2017.[1]

### B.    Removal Proceedings

Petitioner's removal proceedings began on September 1, 2011, when Petitioner was served with a Notice to Appear in Removal Proceedings charging him as removable

---

[1]    Petitioner's history of contact with law enforcement also includes a number of criminal petty offense traffic citations and violations. (Van Der Vaart Decl. ¶ 14, Ex. 6.)

under 8 U.S.C. § 1227(a)(2)(B)(ii) for violating a federal controlled-substance statute (citing Petitioner's February 8, 2008, conviction). (Van Der Vaart Decl. ¶ 15, Ex. 1 at 1–2.) Petitioner failed to appear for his removal hearing and was ordered removed to Somalia *in absentia*. (Van Der Vaart Decl. ¶ 16, Ex. 7.) Immigration authorities did not learn of Petitioner's whereabouts again until June 29, 2016, when he filed a motion to reopen his removal proceedings. (Van Der Vaart Decl. ¶ 17, Ex. 8.) On July 25, 2016, an Immigration Judge ("IJ") granted Petitioner's motion. (*Id.*)

On June 14, 2017, the Department of Homeland Security ("DHS") filed additional charges against Petitioner, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony (offense involving fraud or deceit where the loss to the victim exceeded $10,000). (Van Der Vaart Decl. ¶ 18, Ex. 9.) On June 28, 2017, Petitioner appeared before an IJ for a master calendar hearing. (Van Der Vaart Decl. ¶ 19.) There, Petitioner admitted the federal controlled-substance conviction as a ground for removal, but he contested the aggravated felony charge. (*Id.*) The IJ agreed that the aggravated felony ground for removal did not apply, and as such Petitioner's removal proceedings continued only as to the controlled-substance conviction. (*Id.*, Ex. 10.)

On September 21, 2017, another hearing was held at which it was determined that significant information was missing from Petitioner's applications for relief. (Van Der Vaart Decl. ¶ 20, Ex. 11 at 4–5.) The hearing was thus postponed until November 2, 2017, to allow Petitioner and his counsel time to complete his applications. (*Id.*) On October 31, 2017, Petitioner moved to continue that hearing again, and it was

4

rescheduled to November 30, 2017. (Van Der Vaart Decl. ¶ 21, Ex. 12.) The hearing was eventually held on November 30, 2017, and December 8, 2017, and the IJ granted Petitioner's applications for cancelation of removal, asylum, and withholding of removal. (Van Der Vaart Decl. ¶ 22, Ex. 10 at 4–5.)

On January 12, 2018, DHS filed a timely appeal with the Board of Immigration Appeals ("BIA"). (Van Der Vaart Decl. ¶ 23, Ex. 13.) On May 31, 2018, the BIA reversed the IJ's cancelation of removal, remanded the matter to the IJ to reevaluate Petitioner's eligibility for asylum and withholding of removal, and also directed the IJ to analyze Petitioner's eligibility for protection under the Convention Against Torture ("CAT"). (Van Der Vaart Decl. ¶ 24, Ex. 2.) On August 23, 2018, the IJ conducted a remand hearing on Petitioner's application for asylum, withholding of removal, and eligibility for protection under CAT. (Van Der Vaart Decl. ¶ 25, Ex. 14.) On September 28, 2018, the IJ issued a decision denying Petitioner's applications for asylum and protection under CAT, but granting his application for withholding of removal. (*Id.*) On October 27, 2018, DHS again appealed the IJ's decision to the BIA. (Van Der Vaart Decl. ¶ 26, Ex. 15.) On May 6, 2019, the BIA remanded the matter back to the IJ to evaluate Petitioner's claim for protection on the basis of religion. (Van Der Vaart Decl., Ex. 16 at 5.)

### C.    First Habeas Petition and Bond Hearing

On September 11, 2018, Petitioner filed his first Petition for Writ of Habeas Corpus in District Court asking the Court to release him from immigration detention or to order a bond hearing to determine if he is a danger to the public or a flight risk. *See Omar*

*M. v. Barr*, No. 18-CV-2646 (JNE/ECW), 2019 WL 3570790, at *1 (D. Minn. May 6, 2019), *report and recommendation adopted*, No. 18-CV-2646 (JNE/ECW), 2019 WL 2755937 (D. Minn. July 2, 2019), *appeal dismissed sub nom.*, *Mohamed v. Barr*, No. 19-2881, 2019 WL 8112881 (8th Cir. Oct. 17, 2019). On July 2, 2019, the Court adopted the Magistrate Judge's recommendation that, based on the multi-factor test set forth in *Muse v. Sessions*, No. 18-CV-0054, 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018), Petitioner's continued detention without a bond hearing would deprive him of his right to due process under the Fifth Amendment. *Omar M. v. Barr*, No. 18-CV-2646 (JNE/ECW), 2019 WL 2755937, at *1 (D. Minn. July 2, 2019), *appeal dismissed sub nom.*, *Mohamed v. Barr*, No. 19-2881, 2019 WL 8112881 (8th Cir. Oct. 17, 2019). The Court therefore issued an order directing the IJ to conduct a bond hearing to determine whether Petitioner is a flight risk or danger to the community. *Id.*

On August 1, 2019, the IJ denied Petitioner's bond request. (Van Der Vaart Decl. ¶ 28, Ex. 16 at 8.) The IJ determined that Petitioner bore the burden of proof. (Van Der Vaart Decl., Ex. 16 at 5.) The IJ concluded that:

> [Petitioner] has not met his burden to establish that he does not pose a flight risk or a danger to persons or property. [Petitioner's] criminal history is lengthy . . . [and his] pattern of conduct demonstrates a disregard for law and order, a propensity toward deceit, and a penchant for criminality. His criminal history is probative of his tendency to cause damage to both persons and property, whether it be through an assault or an insurance scheme . . . . Further, his statements to law enforcement regarding his whereabouts and his statements . . . regarding fleeing the country and insulating himself from criminal liability by utilizing his brother as a pawn indicate a significant likelihood of flight, such that no bond would mitigate that risk.

(Van Der Vaart Decl., Ex. 16 at 7.) The IJ noted that Petitioner had at that time been detained for over two years and that he had a large number of supporters present for his hearing. Nonetheless, the IJ found that those factors were not enough to overcome Petitioner's lengthy criminal history and that Petitioner did not provide "any evidence to demonstrate that he ha[d] addressed his proclivity for criminal conduct in any meaningful way." (*Id.*) Petitioner did not appeal the IJ's bond decision. (Van Der Vaart Decl. ¶ 29.)

On September 12, 2019, the IJ closed the record on the remanded proceedings, and on October 15, 2019, the IJ issued a decision denying Petitioner all relief and ordering him removed. (Van Der Vaart Decl. ¶¶ 29–30, Ex. 17.) On October 25, 2019, Petitioner waived his right to appeal, but on November 14, 2019, he filed an appeal of the IJ's decision with the BIA. (Van Der Vaart Decl. ¶¶ 31–32.) As of June 2, 2020, that appeal was fully briefed and the parties are now awaiting the BIA's decision. (Van Der Vaart Decl. ¶¶ 33–34.)

## II.    Analysis

On August 14, 2020, Petitioner filed the present Habeas Petition in federal court. (Doc. No. 1.) On September 9, 2020, the Government filed its Response and the supporting Declaration of James L. Van Der Vaart. (Doc. Nos. 6, 7.) Petitioner filed his Reply brief on September 29, 2020. (Doc. No. 8.) As of the date of this Report and Recommendation, Petitioner has been in custody for three and a half years (since June 6, 2017), and sixteen months have now passed since the IJ denied Petitioner's prior bond decision on August 1, 2019.

Petitioner argues that his prolonged and ongoing detention is unreasonable and violates his right to due process. (*See generally* Habeas Pet.; Doc. No. 8, Reply.) Petitioner also asserts a right to relief under the Eighth Amendment. (Habeas Pet. 38.) Respondents argue that the Court lacks subject-matter jurisdiction over this matter, and that Petitioner's ongoing detention is constitutional under the relevant statutes and he was afforded all the due process he was owed at his previous bond hearing. (*See* Doc. No. 6, Resp.)

On December 10, 2020, Petitioner filed a Motion for Expedited Consideration of his Habeas Petition requesting that "a decision be rendered by this Court on the underlying Petition for Habeas Corpus as soon as practicable but no later [sic] ten days from the date of this filing," because Petitioner has tested positive for COVID-19 and there are other recently confirmed COVID-19 cases within the Kandiyohi County Jail generally.[2] (Doc. No. 10, Mot. to Expedite Consideration 2–5.) In his Motion, Petitioner makes clear that he is not seeking immediate release, but rather the more limited relief of expedited consideration of his Petition. (*Id.* at 5–6.) According to Petitioner's counsel, counsel for Respondents informed Petitioner's counsel that Respondents would review the motion and state their position in a responsive pleading. (*Id.* at 2 n.1.) Counsel for Petitioner also submitted a Declaration indicating that Petitioner tested positive for COVID-19 on December 6, 2020, and is presently "experiencing significant COVID-19

---

[2]    Petitioner also cites the length of his detention as an alternative reason why consideration of his Habeas Petition should be expedited. (Mot. to Expedite Consideration 6–7.)

8

symptoms, including coughing, chest pain, trouble breathing, eye soreness and redness, and loss of taste and small." (Doc. No. 11-1, Ex. A at 2.) Counsel relates that Petitioner alleges that "[t]he jail is not providing medical care to ICE detainees" and "[h]e is not been given any medication or therapy for his condition." (*Id.*)

### A.    Habeas Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject-matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." *Id.*; *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

The Government argues that Petitioner's request for a new bond hearing constitutes a de facto appeal of his previous bond hearing, and that therefore the Court lacks subject-matter jurisdiction to decide this matter. (Resp. 8–13.) In support of this proposition, the Government draws the Court's attention to cases wherein courts found an absence of subject-matter jurisdiction where a detainee sought to challenge to an IJ's bond determination in federal court. (*Id.* at 10–12); *see, e.g.*, *Sai Zhao Jiang v. Chertoff*, No. CIV 06-4486 DSD/RLE, 2008 WL 80582, at *11 (D. Minn. Jan. 8, 2008) ("[T]his Court does not have jurisdiction to consider any challenge to the IJ's findings, or as to the validity of a Removal Order."). But those cases are inapposite to the present matter because here, Petitioner does not challenge the IJ's findings or her ultimate decision as to whether Petitioner should be released on bond. Instead, Petitioner challenges the

constitutionality of his ongoing detention—which has now stretched out for an additional

sixteen months since his last bond determination—under § 1226(c). Accordingly, this

Court finds that it has subject-matter jurisdiction under § 2241 because Petitioner was

detained within this jurisdiction in the custody of DHS at the time he filed this Petition,

*see Spencer v. Kemna*, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention

without bail violates due process. *See Demore v. Kim*, 538 U.S. 510, 517 (2003)

("Section 1226(e) contains no explicit provision barring habeas review, and we think that

its clear text does not bar respondent's constitutional challenge to the legislation

authorizing his detention without bail.").

### B.     Petitioner is in Custody Pursuant to 8 U.S.C. § 1226(c)

Section 236 of the INA governs the civil detention of aliens before and during

removal proceedings. *See* 8 U.S.C. § 1226. In certain circumstances, such as when an

alien has committed a specified type or types of criminal offenses, Congress has

mandated that the alien be detained during removal proceedings. INA § 236(c); 8 U.S.C.

§ 1226(c). In *Demore*, the Court held that "Congress, justifiably concerned that

deportable criminal aliens who are not detained continue to engage in crime and fail to

appear for their removal hearings in large numbers, may require that persons . . . be

detained for the brief period necessary for their removal proceedings." 538 U.S. at 513.

Section 236 must be distinguished from Section 241, which governs the detention

of aliens who have already been ordered removed. 8 U.S.C. § 1231. In *Zadvydas v.

Davis*, the Supreme Court held that "an alien's post-removal-period detention" may not

exceed "a period reasonably necessary to bring about that alien's removal from the

10

United States," and that six months of detention following the start of the statutory removal period is a "presumptively reasonable period of detention." 533 U.S. 678, 689, 701 (2001).

Here, because Petitioner's appeal of the IJ's order to the BIA is still pending, Petitioner is not yet subject to a final order of removal. *See* 8 U.S.C. § 1231(a)(B). Consequently, his ongoing detention is governed by 8 U.S.C. § 1226(c). Petitioner is also subject to mandatory detention pursuant to INA § 236(c) because of his controlled-substance conviction. *See* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(B)(i).

### C.    Due Process Challenge to § 1226(c) Detention

In contrast to 8 U.S.C. § 1231, the Supreme Court has not established the contours of an alien's due process rights when detained without bail pursuant to 8 U.S.C. § 1226(c). In a concurrence in *Demore*, Justice Kennedy wrote: "were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring). In 2018, the Supreme Court held that the statutory scheme does not impose an implicit time limit on an alien's detention under 8 U.S.C. § 1226(c) or require periodic bond detention hearings for continued detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). The Court remanded for further proceedings, however, because the Ninth Circuit "had no occasion to consider respondents' constitutional arguments on their merits." *Id.* at 852.

11

The Eighth Circuit has not opined on this issue, but other circuits have read the Due Process Clause to impose some form of "reasonableness" limitation on the duration of detention that can be justified under § 1226(c). *See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1214 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486, 494–96 (1st Cir. 2016) (opinion withdrawn on reconsideration by *Reid v. Donelan*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018)); *Lora v. Shanahan*, 804 F.3d 601, 614 (2d Cir. 2015) (certiorari granted, judgment vacated, and case remanded for further consideration in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013); *Diop v. ICE Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003). The Second and Ninth Circuits, for example, have "applied a bright-line rule to cases of mandatory detention" and have held that "the government's statutory mandatory detention authority under Section 1226(c) . . . is limited to a six-month period, subject to a finding of flight risk or dangerousness." *Lora*, 804 F.3d at 614 (quoting *Rodriguez*, 715 F.3d at 1133).[3] Other circuits have held that "individualized review is necessary in order to determine whether the detention has become unreasonable." *Reid*, 819 F.3d at 495 (citing *Diop*, 656 F.3d at 233; *Ly*, 351 F.3d at 271). *Reid* set forth a number of factors to consider, *id.* at

---

[3]     This approach, it would appear, has now been rejected by the Supreme Court, at least as a matter of constitutional avoidance. *Jennings*, 138 S. Ct. at 846 ("Even if courts were permitted to fashion 6-month time limits out of statutory silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy.").

500, but the First Circuit later withdrew that opinion "[i]n light of the Supreme Court's decision in *Jennings v. Rodriguez*." *Reid*, 2018 WL 4000993, at *1.

Courts within this District have recognized the due process concerns raised by indefinite pre-removal period detention. *See A. D. v. Barr*, No. CV 20-1218 (PAM/BRT), 2020 WL 5535852, at *6 (D. Minn. Sept. 3, 2020), *report and recommendation adopted sub nom.*, *Abdiaziz A. D. v. Barr*, No. CV 20-1218 (PAM/BRT), 2020 WL 5531568 (D. Minn. Sept. 15, 2020); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896 (D. Minn. 2020); *Amreya R.S. v. Barr*, No. 19-CV-3042 (NEB/LIB), 2020 WL 2770942, at *10 (D. Minn. May 6, 2020), *report and recommendation adopted*, No. 19-CV-3042 (NEB/LIB), 2020 WL 2769278 (D. Minn. May 28, 2020); *Tua Mene Lebie B. v. Barr*, No. 19-CV-2177 (JNE/HB), 2019 WL 5747817, at *5 (D. Minn. Sept. 18, 2019), *report and recommendation adopted*, No. 19-CV-2177 (JNE/HB), 2019 WL 5715703 (D. Minn. Nov. 5, 2019), *appeal dismissed sub nom.*, *Bakor v. Barr*, No. 20-1034, 2020 WL 3669617 (8th Cir. Mar. 20, 2020); *Muse v. Sessions*, Case No. 18-CV-54 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sept. 18. 2018).

The Government argues that Petitioner has no right to a successive bond hearing, "especially where circumstances have not materially changed since the last one."[4] (Resp. 18.) However, a recent decision in this District did not foreclose the possibility that a successive bond hearing might be necessary "should too much time pass following an earlier bond hearing." *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB),

---

[4]   Petitioner does not argue that he is entitled to a bond hearing due to a material change in his circumstances.

2018 WL 6332717, at *9 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018). Moreover, courts outside this District have found that due process may require a second bond hearing based on a multi-factor analysis. *See, e.g.*, *Zagal-Alcaraz v. ICE Field Office*, No. 3:19-CV-01358-SB, 2020 WL 1862254, at *1 (D. Or. Mar. 25, 2020), *report and recommendation adopted sub nom.*, *Zagal-Alcaraz v. ICE Field Office Dir.*, No. 3:19-CV-01358-SB, 2020 WL 1855189 (D. Or. Apr. 13, 2020) (finding a successive bond hearing necessary where petitioner had been detained pursuant to § 1226(c) for twenty-seven months, and twenty-three months had passed since his first bond hearing). Here, the length of time that Petitioner has now been in pre-removal custody—approximately three and a half years—is extraordinarily long. It has also now been over sixteen months since his last bond determination. Considering these unique facts, this Court will analyze Petitioner's claim to determine whether Petitioner's continued detention without another bond hearing is reasonable.

### D.   Reasonableness of Petitioner's Continued Detention

In *Muse*, the court rejected the Government's argument that "the Due Process Clause imposes no limitation on the length of § 1226(c) detention when the government has not engaged in dilatory tactics." 2018 WL 4466052, at *3. Instead, the court found that "a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable." *Id.* The *Muse* court then set forth a multifactor test to determine whether a petitioner's detention under § 1226(c) violates due process. *Id.*

Respondents urge the Court to abandon that multi-factor test here, arguing that the controlling question is whether Petitioner's detention under 8 U.S.C. § 1226(c) continues to "serve its purported immigration purpose." (Resp. 27 (citing *Demore*, 538 U.S. at 527).) Respondents contend that the length of Petitioner's detention is not an exceptional case that merits an extraordinary constitutional remedy. (*Id.* at 29.) Respondents argue that the Supreme Court's holding in *Jennings*, where it rejected the Ninth Circuit's determination that § 1226(c) requires a bond hearing after six months' detention, "also implicitly abrogated case law that had developed in several other circuits (but not the Eighth Circuit), where courts relied on the canon of constitutional avoidance to impose implied limitations on the length of detention under § 1226(c)." (Resp. 22–23.)

This Court finds that Respondents' arguments "read too much into those cases." *See Abdirizak Mohamed A. v. Brott*, No. 18-CV-3063 (ECT/HB), 2020 WL 1062913, at *3 (D. Minn. Mar. 5, 2020). *Jennings* stands for the narrow proposition that it is incorrect to understand § 1226(c) itself as including a requirement for periodic bond hearings. 138 S. Ct. at 842, 846–47. But *Jennings* did not hold "either that a § 1226(c) detention cannot ever be long enough to raise due process concerns or that the length of a detention is irrelevant to a due process challenge." *Abdirizak*, 2020 WL 1062913, at *3. "*Demore* says that mandatory detention under § 1226(c) is facially constitutional, but that holding cannot be separated from *Demore*'s repeated, obvious references to the 'brief' and 'very limited' duration of most § 1226(c) detentions." *Id.* (citing *Demore*, 538 U.S. at 513, 529 n.12); *see also Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) (observing that "Justice Kennedy noted in his concurrence in *Demore* that situations may

15

arise in which a detained person could be 'entitled to an individualized determination as to his risk of flight and dangerousness'") (citing *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)). And while it is true that *Demore* does not define what a "brief" or "very limited" duration is, nor what facts might prompt a determination that a § 1226(c) detention exceeds these limits in a way that violates a Petitioner's due process, asserting that "it is 'inconsistent' with *Demore* to consider a § 1226(c) detention's length as part of a due-process challenge goes too far." *Abdirizak*, 2020 WL 1062913, at *3.

This Court will continue the practice of courts in this District and apply the *Muse* multi-factor test when evaluating a due-process challenge to a § 1226(c) detention. *Accord Abdirizak*, 2020 WL 1062913, at *3; *Deng*, 455 F. Supp. 3d at 902. The *Muse* factors are (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) the delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Muse*, 2018 WL 4466052, at *3.[5] This Court addresses each factor below.[6]

---

[5]     The *Muse* court stated that the *Reid* factors "represent a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c)," and "even though the First Circuit withdrew the *Reid* decision after the Supreme Court decided *Jennings*." *Muse*, 2018 WL 4466052, at *3 n.3 (quoting *Portillo v. Hott*, No. 1:18l-470, 2018 WL 3237898, at *7–9 (E.D. Va. July 3, 2018)).

[6]     Some courts have applied both a *Muse*-style multifactor test, as well as the framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), when a successive bond hearing is sought. *See, e.g.*, *Zagal-Alcaraz v. ICE Field Office*, No. 3:19-CV-01358-SB, 2020 WL 1862254, at *4 (D. Or. Mar. 25, 2020), *report and recommendation adopted sub nom.*, *Zagal-Alcaraz v. ICE Field Office Dir.*, No. 3:19-CV-01358-SB, 2020

1.     **Total length of detention to date**. Petitioner was detained on June 6, 2017 – 1,290 days ago. (Van Der Vaart Decl. ¶ 13.) Petitioner has now been detained for over three and a half years, and it has been sixteen months since his first bond determination. This factor strongly favors granting Petitioner a second bond hearing. *See Muse*, 2018 WL 4466052, at *4 (explaining that detentions of eight and ten months have been found unreasonable under the Due Process Clause) (citing *Sajous v. Decker*, 18-CV-2447 (AJN), 2018 WL 2357266, at *1, *7 (S.D.N.Y. May 23, 2018) (eight months), *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months), *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, at *3–4 (S.D.N.Y. Mar. 13, 2015) (eight months)).

2.     **The likely duration of future detention**. "In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals." *Muse*, 2018 WL 4466052, at *5. Here, Petitioner's appeal of the IJ's order is still pending before the BIA and has been fully briefed and awaiting a decision since June 2, 2020. (Van Der Vaart Decl. ¶ 34.) But

---

WL 1855189 (D. Or. Apr. 13, 2020). If applicable, the *Mathews* test requires the balancing of three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of such interest and the probable value of additional procedural safeguards; and (3) the government's interest. *Id.* at *6–8. This Court observes that were those factors to be applied to the instant matter, they would weigh in favor of providing Petitioner with a successive bond hearing. The private interest at stake—Petitioner's liberty—is fundamental, freedom from imprisonment lays at the core of the liberty protected by the Due Process Clause. Here, the risk of erroneous deprivation of that liberty is high because Petitioner has now gone sixteen months without a bond hearing. And finally, the Government's interest at stake here is not the continued detention of Petitioner, but the Government's ability to continue to detain him without a bond hearing. On balance, that interest is less weighty than the liberty interest of Petitioner.

regardless of the outcome of that appeal, either party may still appeal the BIA's eventual decision to the Eighth Circuit. Accordingly, it is reasonable to conclude that Petitioner's detention could last for many more months – this factor favors a second bond hearing.

        **3.**    **Conditions of detention**. "Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at \*5 (internal citations omitted). Petitioner is currently detained at the Kandiyohi County Jail. Although the record on this issue is not developed, it is reasonable to presume that Petitioner is being held alongside inmates who are serving criminal sentences. *See id.* This factor also favors a second bond hearing.

        **4.**    **Delays caused by the detainee**. There is no evidence in the record that Petitioner has, since his detention on June 6, 2017, engaged in dilatory tactics during his removal proceedings beyond vigorously contesting his removal, as is his right. *Muse*, 2018 WL 4466052, at \*4 (citation omitted). This factor also favors a second bond hearing.

        **5.**    **Delays caused by the Government**. Similarly, there is no evidence in the record that the Government has engaged in any dilatory tactics. This factor favors the Government.

        **6.**    **Likelihood that proceedings will result in final order of removal**. While Petitioner has been ordered removed by the IJ, it is unclear what the ultimate decision of the BIA on Petitioner's appeal will be, whether the BIA's decision will be

18

appealed, and if so, what the arguments the parties might make before the Eighth Circuit—if any—might be. And even if the IJ's decision were affirmed, it is also unclear whether the Government will be able to effect Petitioner's removal to Somalia, especially in light of the uncertainty caused by travel restrictions resulting from the COVID-19 pandemic and potentially Petitioner's own positive COVID-19 test result. Accordingly, this Court "does not have a sufficient basis to determine" whether Petitioner is likely to be removed. 2018 WL 4466052, at *6. Because the record is undeveloped, this Court assumes this factor is neutral and does not favor either party. *See id.*

### 7.    Conclusion: Petitioner's Detention Violates Due Process.

Four of the six *Muse* factors favor the Petitioner, including those that are most important: the length of detention and expected duration of future detention. Only one factor favors the Government. Applying these factors, this Court concludes that Petitioner's continued detention without a second bond hearing violates due process. Accordingly, this Court recommends that his Habeas Petition be granted in part and denied in part, and that an immigration judge be ordered to conduct a bond hearing within thirty days of an order granting habeas relief. *See Muse*, 2018 WL 4466052, at *6–7.

### E.    Burden of Proof at the Bond Hearing

Petitioner asserts that at the bond hearing, the Government should shoulder the burden of proving by clear and convincing evidence that Petitioner's continued detention is necessary to protect the community or to prevent him from fleeing. (Habeas Pet. 4, 7–8, 30–36; Reply 16–24.) The Government argues that, in the event the court orders a bond hearing, it is proper for Petitioner to carry the burden of proof. (Resp. 13–16.)

Section 1226(c) is silent on which party bears the burden of proof, and neither the Supreme Court nor the Eighth Circuit have addressed the issue. In recent years, however, appropriateness of placing the burden of proof on a detainee has been called into question. For example, the Ninth Circuit has concluded that the federal constitution requires that "an alien is entitled to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (quoting *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)). Several district courts have held similarly. *See, e.g.*, *Haughton v. Crawford*, 221 F. Supp. 3d 712, 713–17 (E.D. Va. 2016); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 690–93 (D. Mass. 2018); *Linares Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018). Courts in this District, however, have so far consistently indicated that who bears the burden of proof at a bond hearing is a question for the immigration judge in the first instance. *See Abshir H.A. v. Barr*, No. 19-cv-1033, 2019 WL 3719414, at *3 (D. Minn. Aug. 7, 2019); *Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 963 (D. Minn. 2019); *Muse*, 2018 WL 4466052, at *6.

Two Magistrate Judges in this District have recommended that the court order that the Government bear the burden of proof at a bond hearing. *See D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557-WMW-KMM, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019), *report and recommendation adopted as modified sub nom.*, *Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959 (D. Minn. 2019) ("[T]he Court agrees with cases concluding that the government must show by clear and convincing evidence that an

alien is a danger to the community or a flight risk"); *Melie I. v. Sec'y of Homeland Sec.*,

No. 18-CV-1657 (ECT/HB), 2019 WL 3292070, at *7 (D. Minn. Jan. 7, 2019), *report*

*and recommendation adopted in part, rejected in part sub nom.*, *Melie I. v. McAleenan*,

No. 18-CV-1657 (ECT/HB), 2019 WL 2367161 (D. Minn. June 5, 2019) (D. Minn.

Jan. 7, 2019) ("The Court concludes that the Due Process Clause requires the imposition

of a clear and convincing evidentiary burden on the government at bond hearings held

pursuant to § 1226(a)."). However, in neither of those cases was the Magistrate Judge's

recommendation on that specific issue adopted by the District Court.

   Here, the Government argues that based on regulations and well-established BIA

precedent, the burden of proof at a bond hearing properly lays with Petitioner. (Resp. 13–

14.) "Those regulations, however, do not apply to § 1226(c) detainees." *Deng Chol A.*,

455 F. Supp. 3d at 904; *see* 8 C.F.R. § 236.1(c)(8) (exempting § 1226(c) detainees from

availing themselves of the bond provisions set forth therein). Moreover, the BIA

precedent cited by the Government is inapposite as it relies on those very same

regulations that are not applicable to § 1226(c) detainees. *See Matter of Guerra*, 24 I. &

N. Dec. 37, 38 (BIA 2006); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999).

The Government also argues that the Eighth Circuit considered the bond hearing process

constitutionally permissible in *Ali v. Brott*, 770 Fed. App'x 298, 301 (8th Cir. 2019). That

case is not relevant to the question of who should be assigned the burden of proof,

however. In *Ali*, the Eighth Circuit found a petitioner's detention under § 1226(a)

reasonable because a bond hearing was available. 770 Fed. App'x at 301–02. But that

court did not speak to the narrower question of whether placing the burden of proof at the bond hearing on the detainee was constitutional. *See id.*

Ultimately, while it finds the Magistrate Judges' reasoning in *Bolus D.* and *Melie I.* persuasive, this Court is not convinced that an IJ should be prospectively ordered to apply a specific standard or burden of proof.[7] *See Deng Chol A.*, 455 F. Supp. 3d at 904–05 (citing *Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 963 (D. Minn. 2019)). This Court observes, however, that Petitioner's detention under § 1226(c) is civil in nature and "[i]n other civil settings, both the Supreme Court and Congress have determined that it is proper for the government to carry the burden of proving by clear and convincing evidence that detention is necessary." *Id.* at 905 (citing *Addington v. Texas*, 441 U.S. 418, 433 (1979)). The *Deng Chol A.* court determined that because the same regulations and BIA precedent cited by the Government here do not apply to § 1226(c) detainees, it was appropriate to direct the IJ to consider the proper standard of proof, and which party properly bears the burden thereof, at a bond hearing rather than "defaulting to placing the burden of proof on petitioner." *Id.* That court further opined that "it would appear to make little sense to afford petitioner less due process than is afforded other civil, and even some criminal, detainees." *Id.* (citation omitted). This Court agrees, and therefore recommends that the IJ in this matter also be directed to consider what the proper standard of proof is, and who bears it, should the District Court adopt this Report and Recommendation.

---

[7]     Petitioner could have challenged the applicable standard or burden of proof in an appeal of the IJ's decision regarding his first bond hearing; he did not do so.

**F.      Petitioner's Eighth Amendment Claim Lacks Merit**

Petitioner also claims that his ongoing detention violates his rights under the

Eighth Amendment. (Habeas Pet. 38.) The Government disagrees, arguing that bond is

not required in all cases. (Response 33–34.) To the extent Petitioner is making an

argument that his detention without bail violates the Excessive Bail Clause, that claim

fails.

The Eighth Amendment of the United States Constitution prohibits excessive bail.

*See* U.S. Const. amend. XIII. In *Carlson v. Landon*, the Supreme Court found that the

Excessive Bail Clause was derived from the English Bill of Rights Act. 342 U.S. 542 at

545 (1952). "In England that clause has never been thought to accord a right to bail in all

cases, but merely to provide that bail shall not be excessive in those cases where it is

proper to grant bail." *Id.* The Supreme Court went on to note that the "Eighth

Amendment has not prevented Congress from defining the classes of cases in which bail

shall be allowed in this country," *id.* at 545, and later clarified that "the only arguable

substantive limitation of the Bail Clause is that the Government's proposed conditions of

release or detention not be excessive." *United States v. Salerno*, 481 U.S. 739, 754 (1987)

(internal quotations omitted).

This Court finds that to the extent Petitioner claims that denying him bail violates

the Eighth Amendment, that claim is meritless. "[T]he very language of the [Eighth]

Amendment fails to say all arrests must be bailable." *Carlson*, 342 U.S. at 546. The Court

therefore recommends denying Petitioner's request based on his Eighth Amendment

argument.

### G.      Attorney's Fees and Costs

Under the Equal Access to Justice Act, the Court shall, under certain circumstances, award fees and other expenses to the prevailing party. 28 U.S.C. § 2412(d)(1)(A). The party requesting fees and expenses must submit an application to the court within thirty days of final judgment. *Id.* § 2412(d)(1)(B). This Court recommends that if Petitioner prevails following the objection period, he be permitted to bring a separate motion for costs and fees, to which the Government may respond.

### III.   Petitioner's Motion to Expedite Consideration

As discussed above, on December 10, 2020, Petitioner filed a Motion to Expedite Consideration of his Habeas Petition. (Doc. No. 10, Mot. to Expedite Consideration.) The Government indicated that it will respond to that Motion, but has not yet done so. (*See* Mot. to Expedite Consideration 2 n.1.) The Court finds that shortening the standard 14-day objection period is merited in this case.[8] Therefore, the Court, in its inherent power to manage pending litigation, shortens to five (5) days the time in which any party is permitted to object to the present Report and Recommendation, and five (5) days the time in which any party is permitted to respond to any objection to the present Report and Recommendation. In light of this Court's issuance of this Report and Recommendation and the shortened objection period, the Motion to Expedite Consideration is granted in part and denied in part.

---

[8]     Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, unless the court sets a different deadline." LR 72.2(b)(1).

**ORDER**

**IT IS HEREBY ORDERED** that Petitioner's Motion to Expedite Consideration (Doc. No. 10) is **GRANTED IN PART** and **DENIED IN PART**.


**RECOMMENDATION**

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **GRANTED IN PART** and **DENIED IN PART**;

2.      An immigration judge be ordered to provide Petitioner with a bond hearing within thirty days;

3.      The immigration judge be ordered to consider arguments at the bond hearing regarding the proper standard of proof and which party bears the burden of proving whether Petitioner presents a danger to the community or flight risk;

4.      The immigration judge be ordered to make an individualized determination as to whether Petitioner's continued detention is necessary to protect against danger to the community or to prevent petitioner from fleeing; and

5.      Petitioner be permitted to bring a separate motion relating to costs and fees to which the Government may respond.


Date: December 16, 2020              *s/ Becky R. Thorson*_____
                                     BECKY R. THORSON
                                     United States Magistrate Judge

25

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **five days**. A party may respond to those objections within **five days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).