# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| OMAR M., | Case No. 20-CV-1784 (NEB/BRT) |
| Petitioner, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| MERRICK B. GARLAND, U.S. Attorney General; ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security; TAE D. JOHNSON, Acting Director, Immigration and Customs Enforcement; MARCOS CHARLES, Director, St. Paul Field Office, Immigrations and Customs Enforcement; and ERIC HOLIEN, Sheriff, Kandiyohi County,[1] | |
| Respondents. | |

Petitioner Omar M. ("O.M.") is currently in the custody of the Immigration and Customs Enforcement Agency ("ICE") pending the outcome of his ongoing removal

---

[1] The government notified the Court that new individuals have assumed various federal government positions and thus should be substituted as defendants under Rule 25(d) of the Federal Rules of Civil Procedure. (ECF No. 25 at 1 n.1.) As of the date of this order, Merrick B. Garland has assumed the position of Attorney General. https://www.justice.gov/ag (last accessed Mar. 29, 2021). Alejandro Mayorkas has assumed the position of Secretary of the Department of Homeland Security. https://www.dhs.gov/secretary (last accessed Mar. 29, 2021). Tae D. Johnson has assumed the position of Acting Director, Immigration and Customs Enforcement. https://www.ice.gov/leadership (last accessed Mar. 29, 2021). Marcos Charles has assumed the position of Director, St. Paul Field Office, Immigration and Customs Enforcement. (ECF No. 25 at 1 n.1.) These individuals are automatically substituted as defendants under Rule 25(d).

proceedings. O.M. petitioned for writ of habeas corpus seeking release from custody or, in the alternative, an order requiring his release after thirty days unless he is granted a new bond hearing. (ECF No. 1 ("Pet.").) In a Report and Recommendation dated December 16, 2020, United States Magistrate Judge Becky R. Thorson recommends that this Court grant in part and deny in part O.M.'s petition, and order the Immigration Judge ("IJ") to (1) provide O.M. with a bond hearing within thirty days, (2) consider arguments at the bond hearing regarding which party bears the burden of proving whether O.M. presents a danger to the community or flight risk, and what the proper standard of proof is, and (3) make an individualized determination about whether O.M.'s continued detention is necessary to protect against danger to the community or to prevent him from fleeing. (ECF No. 14 ("R&R") at 25.) Judge Thorson also recommends permitting O.M. to bring a separate motion relating to costs and fees. (*Id.*) Both O.M. and the government object to the R&R. (ECF Nos. 21, 22.) For the reasons below, the Court accepts the R&R in part.

## BACKGROUND

The R&R sets forth the factual detail of the case, and the Court repeats only those facts necessary for context. (*See* R&R at 2–7.) In short, O.M. is a native of Somalia who entered the United States as a refugee and later adjusted his status to lawful permanent resident. (ECF No. 7 ¶ 4.) Beginning in 2005, O.M. had several encounters with law enforcement. (*Id.* ¶¶ 6–8, 11–12.) He was convicted of a federal charge of possession of a

2

controlled substance in violation of 21 U.S.C. Section 844(a) in 2008, and two counts of insurance fraud in Minnesota state court in 2017. (*Id.* ¶¶ 9, 13; ECF No. 7-1[2] at 21–54.) O.M.'s removal proceedings began in 2011; he failed to appear for his removal hearing and the IJ ordered him removed to Somalia *in absentia*. (ECF No. 7 ¶¶ 15–16.) In 2016, O.M. moved to reopen the removal proceedings and the IJ granted his motion. (*Id.* ¶ 17.) Then, in June 2017, ICE detained him pending removal. (*Id.* ¶ 13.) Because of his prior conviction for controlled substances, O.M. is subject to mandatory detention under Section 1226(c). (*Id.* ¶ 19); *see* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(B)(i). He has been in ICE custody continuously since June 2017, or nearly four years, without a final order of removal. (ECF No. 7 ¶ 13; Pet. ¶ 1.)

In 2018, while his removal proceedings were pending, O.M. petitioned for a writ of habeas corpus. Noting that O.M. had, at that point, "been detained for nearly two years despite having been granted withholding of removal," the court granted O.M.'s petition in part and ordered the IJ to conduct a bond hearing within 30 days. *Omar M. v. Barr*, No. 18-CV-2646 (JNE/ECW), 2019 WL 2755937, at *1 (D. Minn. July 2, 2019), *appeal dismissed*, 2019 WL 8112881 (8th Cir. Oct. 17, 2019).

In July 2019, the IJ held the bond hearing, and denied O.M.'s bond request for release. (Pet., Ex. B.) The IJ concluded that O.M. bore the burden of proof and failed to

---

[2] Page citations to ECF No. 7-1 (exhibits submitted by the government) refer to ECF page numbers.

3

meet his burden to establish that he does not pose a flight risk or a danger to persons or property.[3] (*Id.* at 3, 5–6.) O.M. did not appeal the bond hearing decision. (R&R at 7.)

In October 2019, the IJ issued a decision denying O.M. all relief and ordering him removed. (ECF No. 7 ¶ 30.) O.M. appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and the parties are awaiting the BIA's decision. (*Id.* ¶¶ 32, 34.) Because O.M.'s appeal is still pending, his removal order is not final, and 8 U.S.C. Section 1226(c) continues to govern his detention. (R&R at 11.)

In August 2020, O.M. again petitioned the Court for a writ of habeas corpus seeking relief from custody or an order requiring his release after thirty days unless he is granted a second bond hearing. O.M. argues that in a second bond hearing, the government should bear the burden of proof to establish by clear and convincing evidence that he presents a flight risk or a danger to the community. (Pet. at 38–39.) The R&R recommends granting in part and denying in part the Petition.

## ANALYSIS

Both parties object to portions of Judge Thorson's recommendations. The government objects to the recommendation for a second bond hearing. (ECF No. 21 ("Resp'ts' Obj.").) O.M. objects to the recommendation that the IJ—rather than this

---

[3] In denying O.M.'s request for bond, the IJ relied on evidence of O.M.'s lengthy criminal history, as well as statements O.M. made in the context of his insurance fraud case that he was going to "flee the country" to avoid prosecution and "good luck finding me." (Pet., Ex. B at 5.)

4

Court—consider the proper standard of proof and which party bears it. (ECF No. 22 ("Pet'r's Obj.").)

### I. Successive Bond Hearing

The Fifth Amendment entitles noncitizens[4] to "due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003); U.S. Const. amend. V. Mandatory detention under Section 1226(c) does not violate a criminal noncitizen's due process rights during the "brief period necessary" for removal proceedings. *Demore*, 538 U.S. at 513. But when the period of detention under Section 1226(c) is no longer "brief," a detainee's due process rights are implicated. *Bolus A.D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 960–61 (D. Minn. 2019) (citing *Demore*, 538 U.S. at 513); *see Abdirizak Mohamed A. v. Brott*, No. 18-CV-3063 (ECT/HB), 2020 WL 1062913, at *3 (D. Minn. Mar. 5, 2020) (noting that *Demore*'s holding that mandatory detention under § 1226(c) is facially constitutional cannot be separated from its "repeated, obvious references to the 'brief' and 'very limited' duration of most § 1226(c) detentions"). And while the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), stated that it is incorrect to understand Section 1226(c) to require periodic bond hearings, *Jennings* does not stand for the proposition that a Section 1226(c) detention "cannot ever be long enough to raise due process concerns or that the length of a detention is irrelevant to a due process challenge."

---

[4] Section 1226 uses the term "alien," defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

5

*Brott*, 2020 WL 1062913, at *3. Courts in this District resolve due process challenges to Section 1226(c) detention by closely examining the facts of the particular case to determine whether the detention is reasonable using the *Muse* multi-factor test. *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018); *Brott*, 2020 WL 1062913, at *3 (collecting cases).

The government objects to a second bond hearing, arguing that the mere passage of time since the first hearing cannot violate due process. A second bond hearing, the government argues, would constitute establishing a "system where periodically, despite no change in circumstances, he will receive additional opportunities to have a bond hearing on his detention, with the government bearing increasingly high burdens for detaining him." (ECF No. 25 at 4.) The Court disagrees for several reasons.

*Individual inquiry.* First, by ordering a second bond hearing here, the Court is establishing no "system." Rather, it is keeping its constitutional duty to examine the facts of the particular case to determine whether the lengthy continued detention under Section 1226(c) violates due process. *See Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); *see generally Ochoa-Carrillo v. Gonzales*, 437 F.3d 842, 846–47 (8th Cir. 2006) ("Although resident aliens have a right to

6

due process in immigration proceedings, '[t]he constitutional sufficiency of procedures provided in any situation . . . varies with the circumstances.'") (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)) (alterations original).

Muse *factors.* Second, in examining O.M.'s circumstances under the *Muse* multi-factor test, the Court easily concludes that due process requires a second bond hearing. The first *Muse* factor—length of detention to date—strongly favors granting O.M. a second bond hearing because the length of his continued detention is far from "brief." *See* 409 F. Supp. 3d at 716 (finding factor favored petitioner detained 14 months without a bond hearing); *Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-CV-1845 (NEB/HB), 2019 WL 1923110, at *3 (D. Minn. Apr. 30, 2019) (finding factor favored petitioner detained 14.5 months without a bond hearing). As for the second factor—the likely duration of his continued detention—O.M.'s removal proceeding is currently on appeal before the BIA. Although the appeal has been pending since June 2020, neither party predicts when the BIA will issue its decision; nor can this Court do so. *See generally Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (noting that "immigration courts have been struggling to keep pace with the high volume of removal proceedings"); Exec. Off. for Immigr. Rev., Adjudication Statistics: Case Appeals Filed, Completed, and Pending, https://www.justice.gov/eoir/page/file/1248501/download (last visited Mar. 29, 2021) (showing the 82,734 case appeals pending as of Jan. 7, 2021). Courts in this District have weighed this factor in the noncitizen's favor. *See, e.g., Bolus A.D.*, 376 F. Supp. 3d at 962

7

(finding factor favored petitioner where the administrative and judicial process could take "several more months"); *Abshir H.A. v. Barr*, No. 19-CV-1033 (PAM/TNL), 2019 WL 3719414, at *2 (D. Minn. Aug. 7, 2019) (finding factor favored petitioner where his detention would "continue for an unknown period of time while he awaits resolution of the appeal"). The third factor—the conditions of detention—also favors O.M., given that he is currently detained alongside criminal inmates at the Kandiyohi County Jail. (R&R at 18); *see Muse*, 409 F. Supp. 3d at 717 ("The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."); *Abshir H.A.*, 2019 WL 3719414, at *2 (same). The fourth factor also favors O.M. because he has not engaged in dilatory tactics and "should not be punished for raising legitimate defenses to removal."[5] *Muse*, 409 F. Supp. 3d at 717.[6]

*Passage of time*. Third, the government maintains that the R&R fails to explain "why the passage of time *after* a bond hearing is held . . . is relevant to the due process analysis."

---

[5] The two remaining *Muse* factors are neutral or do not tilt so heavily in the government's favor as to justify a different result. There is no indication that the government caused delays in the removal proceedings, and the likelihood-of-removal factor is neutral because the Court cannot predict whether O.M. will be removed. *See Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("The Court cannot predict what will occur with the new filings and Petitioner's appeal, and thus does not have a sufficient basis to determine whether Petitioner will likely be removed.").

[6] The government also objects to the application of the *Muse* factors to requests for a successive bond hearing. But at least one court has applied these factors to a detainee's request for a second hearing; that detainee was Muse himself. *Abdullahi M. v. Barr*, No. 19-CV-3099 (ECT/HB), ECF No. 21 at 10–13 (D. Minn. Apr. 10, 2020), *vacated as moot*, ECF No. 29 (D. Minn. July 27, 2020).

(Resp'ts' Obj. at 3 (emphasis added).) In this situation, it is difficult for the Court to imagine that O.M.'s time in custody is irrelevant. As of the date of this order, O.M. has been detained for nearly four years, and more than eighteen months has passed since his initial bond hearing. In *Demore*, the Supreme Court rejected a facial challenge to Section 1226(c)'s requirement of detention without a bond hearing; it did so with the understanding that the detention would last only for a "very limited time." 538 U.S. at 529 n.12. The *Demore* Court's understanding of this "limited time" was "roughly a month and a half in the vast majority of cases," and "about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.[7] In *Zadvydas v. Davis*, the Supreme Court determined that the presumptive limit to reasonable duration of *post-removal* detention is six months. 533 U.S. 678, 701 (2001). The passage of time since O.M.'s last hearing, with the detention having "no end in sight," gives this Court serious due process concerns. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) ("German Santos has now spent more than two-and-a-half years behind bars waiting for his removal proceedings to end. And there is no end in sight. Because his detention has

---

[7] *See also, e.g., Bolus A.D.*, 376 F. Supp. 3d at 961 (applying *Muse* factors to find a due process violation, noting "B.D. has been detained for more than 16 months, well beyond the 'brief' period of detention contemplated"); *cf. Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *9 (D. Minn. Nov. 15, 2018) (finding that where only four months had passed since petitioner's last bond hearing, the length of detention, taken alone, did not jeopardize petitioner's constitutional rights in the absence of a new bond hearing), *report and recommendation adopted*, 2018 WL 6332507 (D. Minn. Dec. 4, 2018).

grown unreasonable, the Government must hold a bond hearing."); *see also, e.g., Zagal-Alcaraz v. ICE Field Off. Dir.*, No. 3:19-CV-01358-SB, 2020 WL 1862254, at *4–*7 (D. Or. Mar. 25, 2020) (applying a multi-factor test to a request for a successive bond hearing where the last bond hearing was "twenty-three months ago"), *report and recommendation adopted*, 2020 WL 1855189 (D. Or. Apr. 13, 2020); *Erron A. v. Ahrendt*, No. CV 18-13149 (JMV), 2019 WL 3453269, at *3–*4 (D.N.J. July 31, 2019) (conducting "fact-dependent inquiry" before ordering IJ to provide a bond hearing where petitioner had been detained under § 1226(c) for more than 54 months and nine months had passed since his last bond hearing).

*Burden of Proof at Initial Bond Hearing.* Finally, as detailed below, the Court concludes that due process requires a burden of proof (on the government, by clear and convincing evidence) that was not applied at the first bond hearing. *Cf. Frantz C. v. Shanahan*, No. 18-CV-2043 (JLL), 2018 WL 3302998, at *2–*3 (D.N.J. July 5, 2018) (explaining detainee was not entitled to a second bond hearing "absent some showing that his original bond hearing was not bona fide," and finding that original bond hearing, at which the government bore the burden of proof, was bona fide). The IJ was ordered to consider the issue of the burden of proof, did so, and expressly stated that it would place the burden of proof on O.M. "in the absence of an explicit directive" to place the burden on the government. (Pet., Ex. B at 3 & n.4.) The ripeness of the burden-of-proof issue, along with the groundswell of courts determining that due process requires the burden

10

to be placed on the government, cements this Court's determination that due process requires a second hearing.[8]

## II. Burden of Proof

The parties address the burden-of-proof issue at length, with good reason. Neither the Supreme Court nor the Eighth Circuit has squarely addressed the issue of which party bears the burden of proof in a bond hearing for a noncitizen detained under Section 1226(c). Courts in this district have generally declined to decide the burden-of-proof issue, concluding that the IJ "should have the first opportunity to address" the issue of the burden of proof. *Muse*, 409 F. Supp. 3d at 718; *see, e.g., Bolus A.D.*, 376 F. Supp. 3d at 963 (determining that the burden of proof is best left "in the first instance" to the IJ); *Abshir H. A.*, 2019 WL 3719414, at *3 (same); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 n.6 (D. Minn. 2019) (same); *see also Melie I. v. McAleenan*, No. 18-CV-1657 (ECT/HB), 2019 WL 2367161, at *3 (D. Minn. June 5, 2019) (holding that it would be "premature" to decide whether due process requires the petitioner or the government to bear the burden of proof under § 1226(a)).

Although prior rulings in this District have delegated to immigration judges the decision of which party bears the burden of proof (and the attached standard), some of

---

[8] The government also challenges a footnote in the R&R that notes without deciding that if the Court were to apply the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), in this matter, they would support a successive bond hearing. (R&R at 16 n.6; Resp'ts' Obj. at 6–8.) Because the R&R's note regarding *Mathews* is mere *dicta*, the government's objection is immaterial and the Court does not address it.

these same rulings stop just short of placing the burden of proof on the government. For example, the court in *Deng Chol A. v. Barr* explained that "[a]lthough petitioner persuasively argues that procedural due process requires the government to bear the burden of proof, the court is not convinced that it should prospectively order an immigration judge to apply a specific standard of proof at a bond hearing."[9] 455 F. Supp. 3d 896, 904 (D. Minn. 2020), *appeal filed on other grounds*, No. 20-2274 (8th Cir. June 24, 2020). But the court underscored that detention under Section 1226 is civil in nature, and that the Supreme Court and Congress have determined, in other civil settings, "that it is proper for the government to carry the burden of proving by clear and convincing evidence that detention is necessary." *Id*. at 905 (citing *Addington v. Texas*, 441 U.S. 418, 433 (1979)). "[I]t would appear to make little sense to afford petitioner less due process than is afforded other civil, and even some criminal, detainees." *Id.* And in *Muse*, the court made it clear that the IJ should "make an individualized determination regarding whether detention is necessary to protect the community or to prevent Muse from fleeing." 409 F. Supp. 3d at 719; *see also Deng Chol*, 455 F. Supp. 3d at 905 & n.9 (noting that though it appears to be a "regular practice for an immigration judge to place the burden on the detainee to prove that detention is no longer proper," the IJ should not default to this position).

---

[9] *Deng Chol A.* is currently on appeal on other grounds. *See Deng Chol A. v. Barr*, No. 20-2274, App. Br. at 9 n.2 (stating that the parties did not appeal the burden of proof issue).

Unlike O.M., in *Muse* and *Deng Chol*, neither petitioner had gone through an unsuccessful bond hearing where he bore the burden of proof. Muse faced such a circumstance later. He filed a second habeas petition after fourteen months had passed since his initial bond hearing.[10] *Abdullahi M. v. Barr*, No. 19-CV-3099 (ECT/HB), ECF No. 21 ("*Muse III*") at 3–4 (D. Minn. Apr. 10, 2020), *vacated as moot*, ECF No. 29 (D. Minn. July 27, 2020). United States Magistrate Judge Hildy Bowbeer recognized the difference, noting that the question "of how the IJ would resolve the issue of the burden of proof is no longer a hypothetical one . . . [t]here is therefore nothing premature about the question." *Id.* at 20. Judge Bowbeer then recommended an order finding that the Due Process clause required that the government bear the burden of proving by clear and convincing evidence that Muse's continued detention was warranted at his next bond hearing. *Id.* at 20, 22.

The district court in *Muse III* never had the opportunity to address the substance of Judge Bowbeer's recommendation. Muse's order of removal became final, making Section 1231, rather than Section 1226, the applicable statute. *Abdullahi M. v. Barr*, No. 19-CV-3099 (ECT/HB), ECF No. 29 at 2 (D. Minn. July 27, 2020). So the district court vacated Judge Bowbeer's report and recommendation as moot. *Id.*

---

[10] By the time the *Muse III* order was issued, Muse had been detained for 33 months, and more than 18 months had passed since his initial bond hearing. *Id.* at 4.

13

This case parallels the posture of *Muse III*. The IJ here considered the burden-of-proof issue in the first instance, and she noted clearly that she will not place the burden on the government without an explicit order from this Court. As in *Muse III*, the issue is no longer premature or hypothetical. *Muse III* at 20.

Indefinite immigration detention without procedural safeguards is unconstitutional. *Zadvydas*, 533 U.S. at 690–91. And "[f]reedom from imprisonment . . . lies at the heart of the liberty interest" the Due Process Clause protects. *Id.* at 690. When the government seeks to imprison someone in a civil context (a request made in only limited circumstances), such as civil commitment, the government bears the burden to justify its request by clear and convincing evidence. *See, e.g., Addington*, 441 U.S. at 429, 431, 433 (due process required the government to justify civil commitment of an individual with mental illness with clear and convincing evidence). It is not surprising, then, that almost every court to consider the issue has determined that to justify continued detention under Section 1226(c), the government must show by clear and convincing evidence that the noncitizen would likely flee or pose a danger to the community if released.[11] *E.g., German Santos*, 965 F.3d at 213 ("[O]nce detention under

---

[11] Courts in several districts outside the Eighth Circuit have ordered the government to bear the burden in a bond hearing due to a noncitizen's prolonged detention pending removal proceedings under Section 1226(c). *See, e.g., Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 590–91 (D. Md. 2020) (holding the government must prove by clear and convincing evidence that the detainee poses a flight risk or would be a danger to the community if released); *Favi v. Kolitwenzew*, No. 20-CV-2087, 2020 WL 2114566, at *8 (C.D. Ill. May 4, 2020) (same); *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *4 (N.D.

14

§ 1226(c) has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary.").

Placing the burden on the government also avoids the exercise in futility that has been recurring over the last number of years in this District. Repeatedly, this District has directed IJs to consider the burden issue in the first instance, and the IJs have placed it on

---

Cal. Jan. 30, 2020) (same), *appeal filed*, No. 20-15533 (9th Cir. Mar. 27, 2020); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10–*11 (S.D.N.Y. July 25, 2018) (same); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Pa. 2018) (same); *see also Reid v. Donelan*, 390 F. Supp. 3d 201, 224–25 (D. Mass. 2019) (holding that due process required the government to prove a noncitizen's dangerousness by clear and convincing evidence, and prove an alien's risk of flight by a preponderance of the evidence, to justify his detention at a bond hearing), *appeal filed*, No. 19-1900 (1st Cir. Sept. 23, 2019).

Two district courts in the Eleventh Circuit have placed the burden on the detainee. *See J.N.C.G. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-62-MSH, 2020 WL 5046870, at *7 (M.D. Ga. Aug. 26, 2020) (rejecting petitioner's argument that the government should bear the burden of proving he is not a flight risk or danger to others at the bond hearing, relying on *Sopo v. United States Att'y Gen.*); *Khan v. Whiddon*, No. 2:13-CV-638-FTM-29MRM, 2016 WL 4666513, at *7 (M.D. Fla. Sept. 7, 2016) (same). In *Sopo*, the Eleventh Circuit declined to shift the burden to the government for three reasons: (1) the language of Section 1226(c) bars any release, and once the government can no longer constitutionally detain a criminal alien under Section 1226(c) without a bond hearing, the criminal alien's detention "defaults" to Section 1226(a), under which release is possible; (2) the court deferred to the administrative agency in its policymaking; and (3) the court found that shifting the burden of proof to the government would give greater protections to criminal aliens because non-criminal aliens bear the burden of proof under 8 C.F.R. section 1236.1(c). 825 F.3d 1199, 1219–20 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018).

At least one district court deferred ruling on the issue of burden of proof. *See Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11, 13 (D. Mass. 2017) ("[T]he court need not reach the merits of the constitutional argument . . . . Even assuming that Maldonado-Velasquez is correct about the allocation of the burden of proof, he was not prejudiced by the misallocation of that burden at his bond hearing.")

15

the detainee because the BIA has told them to do so. In O.M.'s initial bond decision, the IJ placed the burden on O.M. to prove that his release would not pose a danger and that he is not a flight risk. (Pet., Ex. B at 3 (citing 8 C.F.R. § 1236.1(c)(3); *Matter of Urena*, 25 I&N Dec. 140, 141–42 (BIA 2009); *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); *Matter of Adenji*, 22 I&N Dec. 1102, 1113 (BIA 1999)).) As noted above, the IJ stated that "in the absence of an explicit directive from the United States District Court Judge reversing the burden, the Court will apply the burden of proof set forth in 8 C.F.R. § 1236.1(c)(3) and binding BIA precedent." (*Id.* at 3 n.4.) Thus, if this Court punts again, the IJ will again allocate the burden to O.M. *See also Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020) (explaining that the BIA "do[es] not have the authority to entertain constitutional challenges to the statutes and regulations" it administers); *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) (explaining that neither the BIA nor IJs have authority to rule on the constitutionality of the statutes they administer); *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002) (noting that "the BIA does not have jurisdiction to adjudicate constitutional issues," but that the BIA can reopen proceedings to correct procedural errors) (quotation omitted).

The government does not dispute that the IJs are bound by BIA precedent and that IJs do not have authority to determine constitutional questions. (ECF No. 25 at 5 n.3.) Instead, it maintains that the IJ followed the appropriate standard by applying Section 1226(a) bond procedures to O.M.'s initial bond hearing. (*Id.*) The text of Section 1226(c)

16

provides that aliens with serious crime histories may be released in limited circumstances, if "the *alien satisfies* the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2) (emphasis added). According to the government, requiring the detainee to bear the burden of proof is consistent with Congress's language and purpose of using detention to ensure the safety and appearance of criminal aliens. (ECF No. 25 at 9–10.) The problem with this position is that statutory interpretation must give way to constitutional analysis. *See generally Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018) ("Regardless of whether or not *Chevron*[12] deference applies to the BIA's interpretation of the statute, the issue before the Court is whether the Constitution requires the government to bear the burden of proof in § 1226(a) bond hearings. A *Chevron* argument about statutory interpretation does not change the constitutional analysis."), *appeal filed*, *Pensamiento v. Moniz*, No. 18-1691 (1st Cir. July 26, 2018); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173–74 (2001) (refusing to apply *Chevron* deference where an agency's interpretation of a statute raised "significant constitutional questions"); *Miller v. Johnson*, 515 U.S. 900, 923 (1995) ("[W]e think it inappropriate for a court engaged in constitutional scrutiny to accord deference to [an agency's] interpretation of [a statute].").

---

[12] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Having determined that the burden of proof belongs with the government, the Court further determines that the appropriate standard of proof is clear and convincing evidence. A standard of proof "'serves to allocate the risk of error between the litigants'" and reflects the "'relative importance attached to the ultimate decision.'" *German Santos*, 965 F. 3d at 213 (quoting *Addington*, 441 U.S. at 423); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 855–56 (2d Cir. 2020) (same). Given the paramount importance of the liberty interest, "subjecting the government to a heightened burden of proof strikes an appropriate balance between that individual interest and the government's interest in protecting the community and effective removal procedures." *Bolus A.D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557 (WMW/KMM), 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019), *report and recommendation adopted as modified*, 376 F. Supp. 3d 959 (D. Minn. 2019); *see German Santos*, 965 F.3d at 213–14 ("[W]hen someone stands to lose an interest more substantial than money, we protect that interest by holding the Government to a higher standard of proof."); *Velasco Lopez*, 978 F.3d at 857 (holding that requiring the government to prove that a petitioner detained under Section 1226(a) was "a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention 'strikes a fair balance between the rights of the individual and the legitimate concerns of the state.'") (quoting *Addington*, 441 U.S. at 431).[13]

---

[13] The government also notes that O.M. must "demonstrate both a fundamental procedural error and that the error resulted in prejudice." (ECF No. 25 at 7 (quoting *Bracic v. Holder*, 603 F.3d 1027, 1032 (8th Cir. 2010).) "Prejudice requires a showing that the

18

For these reasons, the Court holds that at the bond hearing, the government will bear the burden of proving that O.M. presents a danger to the community or a flight risk by clear and convincing evidence.

### III. Remaining Aspects of the R&R

The Court has reviewed for clear error the remaining aspects of the R&R to which the parties have not specifically objected. *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Finding no clear error in those findings and conclusions, and following a *de novo* review of the aspects of the R&R to which the parties object, the Court adopts the R&R.

## CONCLUSION

Based on all the files, records, and proceedings in the above-captioned matter, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF No. 14) is ACCEPTED IN PART;

2. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED IN PART and DENIED IN PART;

3. An immigration judge is ORDERED to provide Omar M. with a bond hearing within ten (10) days, at which the government will bear the burden

---

outcome of the proceeding may well have been different had there not been any procedural irregularities," *Bracic*, 603 F.3d at 1032 (quotation omitted). Here, in alleging that the burden of proof was erroneous at his first hearing, O.M. has alleged "an error that . . . *potentially* affects the outcome." *Id.* (citation omitted, emphasis added, alteration original). The Court need not—and on this record, cannot—determine more.

      to prove by clear and convincing evidence that Omar M. presents a danger to the community or flight risk;

4. The immigration judge is ORDERED to make an individualized determination whether Omar M.'s continued detention is necessary to protect against danger to the community or to prevent Omar M. from fleeing; and

5. Omar M. may bring a separate motion relating to costs and fees to which the government may respond.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 29, 2021                            BY THE COURT:

                                                    s/Nancy E. Brasel
                                                    Nancy E. Brasel
                                                    United States District Judge